TGX CORP.

v.

Gaylon SIMMONS, et al.

CONSOLIDATED WITH

Gaylon SIMMONS, et al.

v.

J.C. TEMPLETON, et al.

Civ. A. Nos. 87–5298, 90–0849.

United States District Court, E.D. Louisiana.

March 18, 1992.

---

Jack M. Weiss, Esmond Phelps, II and Robert M. Walmsley, Jr., Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., John P. Sneed, Phelps Dunbar, Jackson, Miss., for TGX Corp. in docket No. 87–5298.

Tgx Corp., Attention Alexia Sidney, Houston, Tex.

Ewell E. Eagan, Jr., Willard Hutchens Henson, Alan Clarence Wolf, Marion D. Welborn–Weinstock, Gordon, Arata, McCollam & Duplantis, Felix Henri Lapeyre, Jr., Lapeyre, Terrell & Randazzo, New Orleans, La., Loulan Joseph Pitre, Jr., Stoel Rives Boley Jones & Grey, Portland, Or., Dermot S. McGlinchey, James Forrest Hinton, Jr. and James M. Garner, McGlinchey, Stafford, Cellini & Lang, Christopher Mar Guidroz, Judith Perhay, Simon, Peragine, Smith & Redfearn, New Orleans, La., for Gaylon Simmons, et al. in docket No. 87–5298.

Cathy E. Chessin, Ewell E. Eagan, Jr., Willard Hutchens Henson, Alan Clarence Wolf, Kathy Manchester Borbas, Gordon, Arata, McCollam & Duplantis, New Orleans, La., Loulan Joseph Pitre, Jr., Stoel Rives Boley Jones & Grey, Portland, Or., for Gaylon Simmons, et al. in docket No. 90–0849.

Daniel Lund, Harold B. Carter, Jr., David Wayne O'Quinn, Montgomery, Barnett, Brown, Read, Hammond & Mintz, Julie E. Schwartz, Liskow & Lewis, New Orleans, La., Donald C. Templin, Rhonda R. Winslett, Haynes & Boone, Dallas, Tex., James M. Garner, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for J.C. Templeton, et al. in docket No. 90–0849.

Christopher Mar Guidroz, Judith Perhay, Simon, Peragine, Smith & Redfearn, New Orleans, La., for movant.

BEER, District Judge.

Plaintiffs in civil action 90–0849 have filed a motion to reinstate their previously dismissed claims. Plaintiffs' motion was heard on February 19, 1992. Defendants' opposition to plaintiffs' motion involves a constitutional challenge to a Congressional statute. Consistent with Local Rule 1.10, the court has therefore withheld ruling until the Attorney General has had an opportunity to address the constitutional issues presented. The Attorney General has now notified the court that it does not wish to intervene in this matter. Accordingly, the court now rules as follows:

## I. BACKGROUND

In November 1986, the Simmons sold their full interest in LEDCO, Inc., to TGX Corp. (TGX) for approximately $21,000,000. The Simmons received $11,000,000 in cash; 300,000 shares of preferred TGX stock, valued at approximately $3,000,000; real property; forgiveness of a $1,000,000 debt they owed to LEDCO; and, deferred consideration of $5,000,000 plus interest, to be paid in annual installments.

The Simmons contend that, because the TGX stock has proven worthless and none of the deferred payments has been made, they have received only $13,000,000 instead of the expected $21,000,000. The Simmons claim their $8,000,000 in damages was caused by their reliance on TGX's financial statements in agreeing to the LEDCO sale. The Simmons claim the statements did not disclose the existence of a lawsuit pending against TGX, which caused the devaluation of TGX stock and rendered TGX unable to honor its deferred payment obligations. TGX was eventually forced into bankruptcy.

TGX sued the Simmons in 1987 ("1987 suit"), and the Simmons counterclaimed alleging violations of the Securities Act of 1933 ("1933 Act"), the Securities Exchange Act of 1934 ("1934 Act") and Louisiana Blue Sky law. The suit was automatically stayed when TGX filed for bankruptcy in February 1990. On March 8, 1990, the Simmons filed suit against TGX's individual directors, and its law and accounting firms ("1990 suit"), alleging violations of section 10(b) of the 1934 Act, Rule 10b–5 promulgated thereunder, and Louisiana Blue Sky law, as well as post-sale tortious interference with contract and breach of fiduciary duties.

The individual directors and TGX's law firm immediately moved to dismiss the 1990 suit, claiming the Simmons' federal claims were time-barred by *Lampf v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The Court in *Lampf* borrowed from another section of the 1934 Act and held that private actions under section 10(b) of the 1934 Act, and Rule 10b–5 promulgated thereunder, are subject to a one-year-from-discovery statute of limitations and a maximum three-year-from-transaction period of repose. *Id.* at 2780–81.

The Simmons thereafter admitted that *Lampf* time-barred their 1990 suit. Based on this admission, the court ordered defendants to prepare an order of dismissal and judgment. Before judgment was entered, however, the Simmons filed a motion to amend their counterclaim in the 1987 suit so as "to assert identical claims against the named defendants dismissed in the Proposed Order." The Simmons were concerned that entry of judgment in the 1990 suit would pose a res judicata bar to their proposed Fifth Amended Counterclaim in the 1987 suit. The Simmons therefore urged the court to dismiss their federal claims from the 1990 suit without prejudice. The court agreed, issuing a minute entry on August 5, 1991, dismissing the section 10(b) and Rule 10b–5 claims from the 1990 suit without prejudice. In a minute entry dated October 16, 1991, the court dismissed the Simmons' state law claims from the 1990 suit, also without prejudice.

On November 27, 1991, Congress passed S. 543, a bill which amends the 1934 Act by adding section 27A, 15 U.S.C. section 78aa–1. Section 27A provides, inter alia, a 60–day period for reinstating section 10(b) claims which had previously been dismissed as time-barred under *Lampf.* The president signed S. 543 into law, P.L. 102–242, on December 19, 1991. Based on section 27A, the Simmons now seek to reinstate the 10(b) and 10b–5 claims previously dismissed from their 1990 suit and, based thereon, seek reinstatement of their allegedly pendent state claims as well.[1]

## II. LAW AND ANALYSIS

Plaintiffs' motion is hereby DENIED. Although plaintiffs satisfy the facial requirements for reinstatement under section

---

1. Technically, a judgment has never been entered dismissing plaintiffs' state claims from the 1990 suit. As stated in the conclusion to this minute entry, counsel for defendants are therefore jointly requested to submit a judgment dismissing plaintiffs' state claims.

27A, section 27A violates separation of powers principles by contravening the constitutional mandate established in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

### A. *Section 27A Analysis*

Plaintiffs satisfy the facial requirements for reinstatement under section 27A.[2] Section 27A(b) is herein specifically at issue, as this court dismissed plaintiffs' section 10(b) and Rule 10b–5 claims on August 5, 1991. A plaintiff seeking reinstatement under section 27A(b) must prove (1) that he commenced a private civil action under section 10(b) before June 19, 1991; (2) that said action was dismissed as time-barred subsequent to June 19, 1991; and (3) that said action was timely filed under the limitations period applicable in the jurisdiction on June 19, 1991. Plaintiffs herein satisfy these requirements.

*The First and Second Requirements:* Plaintiffs satisfy the first and second requirements for reinstatement under section 27A(b). Plaintiffs satisfy the first requirement for reinstatement because they filed their action under section 10(b) prior to June 19, 1991. Plaintiffs filed their complaint in civil action 90–0849 on March 8, 1990. Plaintiffs also satisfy the second requirement for reinstatement because their action under section 10(b) was dismissed as time-barred after June 19, 1991. Statements from the bench in open court, and the court's judgment and order, demonstrate that plaintiffs' section 10(b) claims were dismissed because they were time-barred.

Defendants err when they claim plaintiffs voluntarily dismissed their section 10(b) and Rule 10b–5 claims. Defendants

filed a motion to dismiss said claims immediately after the Court issued *Lampf.* Plaintiffs opposed defendants' motion. Plaintiffs' thereafter withdrew their opposition, as it became clear that *Lampf* time-barred their claims. The court then dismissed plaintiffs' claims in open court, and ordered defendants to submit a conforming order and judgment. Defendants submitted a judgment which dismissed plaintiffs' claims with prejudice. Plaintiffs asked that the judgment be amended to dismiss their claims without prejudice, so as to avoid res judicata effects concerning a pending amendment to their counterclaim in the 1987 suit. The court granted plaintiffs' request, and dismissed their federal claims without prejudice. The court's minute entry, and the documents concerning it, do not mention voluntary dismissal under Federal Rule of Civil Procedure 41.

Plaintiffs thus satisfy the first and second requirements for reinstatement under section 27A(b).

*The Third Requirement:* Plaintiffs also satisfy the third requirement for reinstatement under section 27A(b), because their action was timely-filed under the laws of this jurisdiction as they existed on June 19, 1991. Before *Lampf,* this jurisdiction applied the two year limitations period set by Louisiana Revised Statutes Annotated section 51:714(C)(1) (West 1987). *See Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir. 1988). The period set by section 51:714(C)(1) commences when " 'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof.... Investors are not free to ignore 'storm warnings' which would alert a reasonable investor to

---

**2.** Section 27A amends the 1934 Act as follows:

Sec. 27A. (a) *Effect on Pending Causes of Action*—The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed in June 19, 1991.

(b) *Effect on Dismissed Causes of Action*— Any private civil action implied under section

10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

the possibility of fraudulent statements or omissions in his securities transaction." *Id.* at 606–07 (citations omitted). Mr. Simmons' affidavit states that he learned of defendants' alleged concealment of the pending TGX litigation in March 1989, so as to render timely the March 1990 filing of plaintiffs' suit.

Defendants have not offered viable evidence to refute plaintiffs' assertion that the 1990 suit was timely filed under section 51:714(C)(1). Defendants claim plaintiffs should have known of the pending TGX litigation as early as 1987, when defendants disclosed same in their required filings with the SEC. Plaintiffs' response to defendants' claim is two-fold: Plaintiffs claim (1) TGX's 1987 10–K only briefly and vaguely referred to pending litigation, and thus did not create a "storm warning" sufficient to trigger the two-year limitations period; and (2) that even if the brief statement in TGX's 1987 10–K were sufficient to trigger the limitations clock, the 10–K was not actually filed with the SEC until March 25, 1988. Plaintiffs' second response is uncontested, and defeats defendants' claim that plaintiffs' action was not timely filed. Plaintiffs filed their action less than two years after defendants filed the 10–K form which defendants claim disclosed the pending TGX litigation. Plaintiffs action was thus timely filed even if the 10–K were sufficiently descriptive so as to commence the running of section 51:714(C)(1)'s limitations clock.

Plaintiffs thus satisfy all three requirements for reinstatement under section 27(A)(b). The court therefore now turns to the question of section 27A's constitutionality.[3]

### B. *Constitutional Analysis*

Section 27A is unconstitutional, as it violates established separation of powers principles. Congressional enactments are entitled to deference regarding their constitutionality, but section 27A cannot stand because, although Congress has changed the law, it has done so in a manner inconsistent with the constitutional mandate established in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).[4]

Congressional enactments are entitled to deference regarding their constitutionality, but said deference is not absolute. "It is of course true that federal statutes are to be construed so as to avoid serious doubts as to their constitutionality, and that when faced with such doubts the Court will first determine whether it is fairly possible to interpret the [challenged] statute in a manner that renders it constitutionally valid." *Communication Workers of Am. v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988) (citations omitted). When courts are reviewing constitutional challenges to such statutes, however, "statutory construction may not be pressed 'to the point of disingenuous evasion.'" *Id.* (citation omitted). The aforestated deference thus cannot sustain a congressional enactment that contravenes established constitutional principles.

■ Two related constitutional principles are herein at issue. The first principle is that while "Congress can *amend* or *repeal* any law ... [it] cannot 'prescribe a rule for a decision of a cause in a certain way' where 'no new circumstances have been created by legislation.'" *Seattle Audubon Soc'y v. Robertson,* 914 F.2d 1311, 1315 (9th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 2886, 115 L.Ed.2d 1051 (1991) (quoting *United States v. Klein,* 80 U.S. (13 Wall.) 128, 147, 20 L.Ed. 519 (1871)) (emphasis in original). The second

---

**3.** The court was required to determine whether plaintiffs satisfied the facial requirements for reinstatement before it addressed section 27A's constitutionality. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) ("'Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.' ... 'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.'" (citations omitted)).

**4.** Having concluded that section 27A violates separation of powers principles, the court declines to address defendants' claim that the application of section 27A would violate due process as well.

constitutional principle at issue is that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991). Section 27A does not contravene the first of these principles, but it does contravene the second and is thus unconstitutional.

■ *Congress has changed the law with the enactment of section 27A:* Section 27A represents a change in the law, such that Congress has not contravened the separation of powers principles established by *Klein* and its progeny. Before section 27A, all section 10(b) claims were properly subject to the limitations period announced in *Lampf* and made to apply retroactively by *Beam.* Section 27A then changed the law, by limiting *Lampf* to prospective application only.

*Lampf* and *Beam* together establish that all section 10(b) claims ever filed should have been subject to a "one-year-from-discovery - and - three - year - from - transaction" limitations period. *Lampf* announced this limitations period, *see* 111 S.Ct. at 2780–81, and *Beam* mandated that *Lampf* be afforded full retroactive effect. As explained in *Beam,* the *Lampf* Court was not making law, but rather, was " 'finding it'— discerning what the law *is,* rather than decreeing today what it is today *changed to,* or what it will *tomorrow* be." *Beam,* 111 S.Ct. at 2451 (Scalia, J., concurring) (emphasis in original). The limitations period "found" in *Lampf* thus did not represent a change in the law, but rather, a mere clarification what the law has always been. Courts such as the Fifth Circuit, which had previously applied other limitations periods to section 10(b) claims, had thus done so in error.

*Lampf,* through *Beam,* thus established what the law has always been, and section 27A changed that law. After *Lampf* and *Beam,* but before the enactment of section 27A, it was clear that section 10(b) claims filed pre-*Lampf* and post-*Lampf* were all properly subject to the limitations period stated in *Lampf.* Section 27A then rewrote the law, limiting *Lampf* to prospective application by stating that *Lampf* would not apply to section 10(b) claims filed before June 20, 1991. Section 27A stated that these pre-*Lampf* claims would once again be subject to the applicable jurisdiction's pre-*Lampf* limitations rule. Between June 20, 1991, and December 19, 1991, pre-*Lampf* claims were thus subject to the *Lampf* rule, while after December 19, 1991, said claims were subject to the applicable jurisdiction's pre-*Lampf* limitations rule. Section 27A thus changed the law, by altering the limitations period applicable to pre-*Lampf* claims.

Congress has thus changed the law, so as not to implicate the separation of powers principles established by *Klein* and its progeny. The court now turns to the question of whether Congress has changed the law in a permissible manner.[5]

B. *Section 27A contravenes the constitutional mandate established in* Beam: While Congress has changed the law, it has done so in a manner inconsistent with the constitutional mandate established in *Beam.* Section 27A thus violates separation of powers principles, such that it is unconstitutional and cannot be applied to reinstate plaintiffs' claims.

In *Beam,* the Court addressed the retroactive application of judicial precedent. Justice Souter, delivering the judgment of the Court, first outlined the retroactivity principles to which precedent had previously been subject. *Beam,* 111 S.Ct. at 2443–

---

**5.** This court thus agrees with the court in *Bankard v. First Carolina Communications, Inc.,* 1992 WL 3694, at *6 (N.D.Ill. Jan. 6, 1992), which found that Congress had changed the law with the enactment of section 27A. This court disagrees with the *Bankard* court, however, to the extent it believed such a finding ended the separation of powers inquiry. Once a court finds that a congressional enactment has changed the law, the court must then review the enactment itself, *to assure that its substance does not constitute an impermissible legislative encroachment on the judicial power.* Thus, because this court has determined that section 27A has changed the law, the court must now consider whether section 27A changes the law in a manner consistent with established separation of powers principles.

44. One such principle, described as "selective prospectivity," held that "a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." *Id.* at 2444.

Recognizing the inequity inherent in selective prospectivity, Justice Souter proceeded to abandon the principle in the civil context. Justice Souter began by stating that "selective prospectivity ... breaches the principle that litigants in similar situations should be treated the same, a fundamental component of *stare decisis* and the rule of law generally." *Id.* For this reason, Justice Souter continued, the Court had already abandoned selective prospectivity in the criminal context. *Id.* at 2444–45 (citing *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987)). Justice Souter then explicitly adopted *Griffith* in the civil context, stating that "*Griffith* cannot be confined to the criminal law. Its equality principle, that similarly situated litigants should be treated the same, carries comparable force in the civil context. Its strength is in fact greater in the latter sphere." *Id.* at 2446 (citation omitted). Justice Souter then concluded in strong terms, stating that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.* at 2448. Three separate concurrences confirm the Court's rejection of selective prospectivity. *See id.* at 2448–51 (White, J., concurring; Blackmun, J., concurring; Scalia, J., concurring).

The Court's rejection of selective prospectivity was *rooted in article III* of the constitution. While Justice Souter did not explicitly reference article III, his reliance on, and adoption of *Griffith* confirm that his opinion was constitutionally based. *Griffith* rested squarely on constitutional grounds, holding that article III required full retroactive application of the Court's decisions to pending criminal cases. As the Court therein stated,

> failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication. First, it is a settled principle that this Court adjudicates only "cases" and "controversies." See U.S. Const., Art. III, § 2. Unlike a legislature, we do not promulgate new rules of constitutional criminal procedure on a broad basis. Rather, the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule. But after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.

*Griffith,* 479 U.S. at 322–23, 107 S.Ct. at 713. Justice Souter's exhaustive reliance on *Griffith* thus confirms that his *Beam* opinion was of constitutional magnitude.

The concurrences in *Beam* further confirm that the Court's rejection of selective prospectivity was constitutionally based. Like Justice Souter, Justices White and Blackmun each relied heavily on *Griffith,* see *Beam,* 111 S.Ct. at 2448–50 (White, J., concurring; Blackmun, J., concurring), and thus ultimately on article III. The clearest constitutional pronouncement, however, came from Justice Scalia. In a concurrence joined by Justices Marshall and Blackmun, Justice Scalia stated that "[i]f the division of federal powers central to the constitutional scheme is to succeed in its objective ... the fundamental nature of those powers must be preserved as that nature was understood when the Constitution was enacted." *Id.* at 2450 (Scalia, J., concurring). Justice Scalia first described the scope of Executive power, *see id.,* and then continued: "So also ... '[t]he judicial power of the United States' conferred upon this Court ... must be deemed to be the judicial power as understood by our common-law tradition. That is, the power 'to say what the law is,' not the power to change it." *Id.* at 2450–51 (citing *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). Justice Souter's opinion for the Court, combined with the aforestated concurrences, thus establish that the

Court's rejection of selective prospectivity was constitutionally based.

*Beam* thus reflects a judicial interpretation of the constitution, such that congressional enactments inconsistent therewith must fall. It is well-settled that the Court is the ultimate arbiter of the constitution, and that Congress cannot enact legislation contrary to the Court's constitutional doctrine. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177–78, 2 L.Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department to say what the law is.... So, if a law be in opposition to the constitution ... the court must determine which of these conflicting rules governs the case: this is of the very essence of judicial duty."). Regarding the present case, *Beam* found unconstitutional the selective prospectivity principle that "a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." *Beam,* 111 S.Ct. at 2444. Thus, if section 27A triggers the selective prospectivity proscribed in *Beam,* section 27A must be found unconstitutional.

The court believes section 27A does effect the selective prospectivity constitutionally proscribed in *Beam,* such that section 27A is unconstitutional. By limiting *Lampf* to prospective application, Congress has contravened *Beam* by causing similarly situated litigants to be treated dissimilarly. Prior to *Lampf,* the *Lampf* plaintiffs and the current plaintiffs were similarly situated. The *Lampf* plaintiffs then had their claims dismissed based on the rule announced and applied therein. Thus, the *Lampf* Court "appl[ied] a new rule in the case in which it [was] pronounced." *Id.* The current plaintiffs, by contrast, are able to urge their claims because section 27A shields them from *Lampf* by reviving the jurisdiction's preexisting limitations rule.

Congress has thus "return[ed] to the old [rule] with respect to all others arising on facts predating the pronouncement." *Id.* Congress has thus effected the exact selective prospectivity found unconstitutional in *Beam.* As such, section 27A must fall.[6]

Thus, although plaintiffs satisfy the facial requirements for reinstatement under section 27A, plaintiffs' motion must be denied because section 27A contravenes the constitutional mandate established in *Beam.*

## III. CONCLUSION

It is hereby ADJUDGED, ORDERED and DECREED that plaintiffs' motion to reinstate is DENIED. Consistent with footnote 1, counsel for defendants are jointly requested to submit a judgment dismissing plaintiffs' state claims.

---

**6.** The court's conclusion is consistent with the first Fifth Circuit case to apply *Beam.* In *Sterling v. Block,* 953 F.2d 198 (5th Cir.1992), the court considered whether *Davis Oil v. Mills,* 873 F.2d 774 (5th Cir.), *cert. denied,* 493 U.S. 937, 110 S.Ct. 331, 107 L.Ed.2d 321 (1989), should be applied retroactively. Applying *Beam,* the court concluded "that because the holding in *Davis Oil* was applied retroactively to the parties in that case, it must be applied retroactively here." *Id.* at 199. Similarly in this case, "because the holding in *Lampf* was applied retroactively to the parties in that case, it must be applied retroactively here." Section 27A precludes this result, and thus it cannot stand.