**PACIFIC MUTUAL LIFE INSURANCE CO., Plaintiff,**

v.

**FIRST REPUBLICBANK CORPORATION, IFRB Corporation, Morgan Stanley and Co., Inc., Goldman Sachs & Co., Ernst & Young & Co., and Salomon Brothers Inc., Defendants.**

**Civ. No. 3:91–CV–0441–H.**

United States District Court, N.D. Texas, Dallas Division.

July 13, 1992.

Stewart M. Weltman, Chicago, Ill., Harold E. Vanberg, Jr., Burleson Pate & Gibson, Dallas, Tex., and Michael B. Hyman and Carol V. Gilden, Much Shelist Freed Denenberg Ament & Eiger, Chicago, Ill., for plaintiff.

Gerald C. Conley, Jackson & Walker, James L. Truitt, Hutcheson & Grundy, Dallas, Tex., for Morgan Stanley & Co.

Bruce W. Collins, Fletcher L. Yarbrough, Marvin S. Sloman, Barry R. Bell, Jeffrey B. Lane, Lyman G. Hughes, Carrington Coleman Sloman & Blumenthal, Dallas, Tex., for Goldman Sachs & Co.

Jonathan M. Hoff, Weil Gotshal & Manges, New York City, Morton L. Susman, Weil Gotshal & Manges, Houston, Tex., Robert G. Cohen and Carl D. Liggio, Ernst & Young, New York City, for Ernst & Young & Co.

Donald Colleluori and Ernest Figari, Jr., Figari & Davenport, Dallas, Tex., Theodore Gewertz, Wachtell Lipton Rosen & Katz, New York City, for Salomon Bros., Inc.

Paula M. Billingsley, Asst. U.S. Atty., Dallas, Tex., and Robin Rosenbaum, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for SEC.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiff's Motion to Reinstate Action and supporting memorandum, filed January 31, 1992; Defen-

dants' Response in Opposition to Plaintiff's Motion, filed February 20, 1992; Plaintiff's Reply Memorandum, filed March 2, 1992; Plaintiff's letter to the Court, dated March 5, 1992; Defendants' letter to the Court, dated March 9, 1992; Plaintiff's letter to the Court, dated March 10, 1992; Defendants' letter to the Court, dated April 3, 1992; Plaintiff's letter to the Court, dated April 16, 1992; and Plaintiff's letter to the Court, dated April 29, 1992.

On June 8, 1992, pursuant to 28 U.S.C. § 2403(a), the Court certified its intent to find unconstitutional the Federal Deposit Insurance Corporation Improvement Act of 1991 ("FDICIA"), Pub.L. No. 102–242, § 476, 105 Stat. 2236 (1991), and directed the United States to file any pleadings in support of the constitutionality of this statute by July 8, 1992. Accordingly, there is also before the Court the Statement of Interest of the United States and the Securities and Exchange Commission, filed July 6, 1992.

## I. *Factual Summary*

This is a securities fraud case brought by Plaintiff Pacific Mutual Life Insurance Co. ("Pacific Mutual") on March 1, 1991. The lawsuit arises from Pacific Mutual's purchase in July and September 1987 of Inter-First 12¾% Notes due October 1, 1989. Pacific Mutual seeks compensatory damages under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and compensatory and punitive damages for common law fraudulent misrepresentation. Pacific Mutual's claims are based on allegedly false and misleading statements that were made no later than December 1987.

On August 16, 1991 the Court granted Defendants' motions and dismissed with prejudice Plaintiff's federal-law claims as time-barred, and dismissed without prejudice Plaintiff's pendent state-law claims. *See* Memorandum Opinion and Order, dated August 16, 1991 ("MOOP"). The Court's ruling was premised on the Supreme Court decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——,

111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), which established that claims arising under Section 10(b) of the Exchange Act must be governed by a federal statute of limitations. To this end, the Supreme Court selected as the governing standard for an action under Section 10(b) the language of Section 9(e) of the Exchange Act, and concluded that such action must be commenced within one year after discovery of the facts constituting the violation and within three years after such violation ("1-and-3 year statute of limitations" or simply the "*Lampf* rule"). *Id.* —— U.S. at —— and n. 9, 111 S.Ct. at 2782 & n. 9.

Retroactive application of *Lampf* to this case was justified by the fact that the Supreme Court itself had applied the newly articulated statute of limitations in *Lampf* retroactively to the circumstances then pending before it. In a decision issued the same day as *Lampf,* the Supreme Court *required* retroactive application of the 1-and-3 year statute of limitations to Section 10(b) actions, stating,

> [o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. The applicability of rules of law are not to be switched on and off according to individual hardship....

> .    .    .    .    .

> [W]hen the Court has applied a rule of law to litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata.

*James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, ———–——, 111 S.Ct. 2439, 2447–48, 115 L.Ed.2d 481 (1991). Although a plurality opinion, six Justices in *Beam* agreed in the judgment of the Court that once a new rule of law is applied retroactively in one case it must also be applied to all other pending cases involving the same issue. For a detailed discussion of the Justices' positions on this issue, see MOOP at 4–6.

A final judgment has been entered in this case, and it has not been appealed. Pacific Mutual instead has initiated an action in

the 192nd District Court of Dallas County asserting its common-law fraud claims.

Congress responded to the Supreme Court's ruling in *Lampf* with passage of the FDICIA which was signed into law by the President on December 19, 1991. FDICIA specifically amended the Exchange Act by adding Section 27A which provides in relevant part,

> (b) **EFFECT ON DISMISSED CAUSES OF ACTION.**—Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—
>
> (1) which was dismissed as time barred subsequent to June 19, 1991, and
>
> (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,
>
> shall be reinstated on motion by plaintiff not later than 60 days after the date of enactment of this section.

Pub.L. No. 102–242, § 476, 105 Stat. 2236. With passage of FDICIA, Congress aimed to remove the retroactive application of *Lampf,* and correct "the most adverse effects" of the decision. 178 Cong.Rec. S18624 (daily ed. Nov. 27, 1991) (statement of Sen. Bryan). Congress left untouched the prospective application of the *Lampf* rule.

Pacific Mutual now argues that reinstatement of its federal securities claims in this action is warranted, because Section 27A requires application of the statute of limitations prevailing in the relevant jurisdiction on June 19, 1991; and that accordingly, the statute of limitations in the Fifth Circuit for Section 10(b) actions at that time was four years. *See Sioux Ltd., Sec. Litigation v. Coopers & Lybrand,* 914 F.2d 61, 64 (5th Cir.1990). Commencement of this action on March 1, 1991 falls within this four year period. Pacific Mutual further urges this Court to exercise pendent jurisdiction, and reinstate as well its common law fraud claims.

Defendants Ernst & Young, Goldman, Sachs & Co., Morgan Stanley & Co. Incorporated, and Salomon Brothers Inc. (collectively "Defendants") oppose reinstatement on the grounds that Section 27A is unconstitutional.

The United States speaks only in support of the constitutionality of Section 27A.

## II. *Analysis*

There appears to be no dispute that if the terms of Section 27A are applied to this case, Pacific Mutual is entitled to reinstatement of its federal securities claims. Consequently, the sole issue before the Court is the constitutionality of Section 27A. Several district courts have had occasion to consider the constitutionality of Section 27A [1]. Yet, the diversity of their opinions combined with the fast changing field of jurisprudence surrounding Section 27A make the constitutional inquiry before the Court a live and contested one [2].

■ A particularly apt predicate to the Court's analysis in this case is the fundamental principle that a statute approved by both Houses of the Congress and signed by the President should be invalidated only "for the most compelling constitutional reasons," *Bowsher v. Synar,* 478 U.S. 714,

---

**1.** It should be noted that some courts have applied Section 27A without considering its constitutionality. By way of example, see: *Sperber Adams Assoc., et al. v. JEM Management Ass. Corp., et al.,* 1992 WL 28444, 1992 U.S.Dist. LEXIS 1283 (S.D.N.Y. February 7, 1992); *Schick, et al. v. Ernst & Young,* 141 F.R.D. 23 (S.D.N.Y.1992); *Ahmed, et al. v. Trupin, et al.,* 781 F.Supp. 1017 (S.D.N.Y.1992); *Ades, et al. v. Deloitte & Touche, et al.,* 1992 WL 6142, 1992 U.S. Dist. LEXIS 12 (S.D.N.Y. January 3, 1992).

The United States also has cited to a circuit court case which has upheld the constitutionality of Section 27A, purely in the form of dicta and absent any substantive discussion. *See Lit-*

*ton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.,* 967 F.2d 742, at 751 n. 6 (2nd Cir. 1992).

**2.** The Court is aware of the two decisions in the Northern District of Texas which have involved application of Section 27A. *See Southwest Realty, Ltd. v. Daseke, et al.,* No. CA3–89–3055–D, slip op. at 29 (N.D.Tex. May 21, 1992); *Bancroft, et al. v. Kneipper, et al.,* 1992 WL 373164, CA3–90–2754–D, slip op. at 9 (N.D.Tex. April 30, 1992). The circumstances in these cases are distinct, and on both occasions, the court reserved the right to find the statute unconstitutional at a later time.

736, 106 S.Ct. 3181, 3192, 92 L.Ed.2d 583 (1986), after having resorted to every reasonable construction capable of saving the statute from constitutional infirmity, *Communications Workers v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988). Courts, however, cannot sustain a congressional enactment that contravenes established constitutional principles. *Id.*

Defendants challenge the constitutionality of Section 27A on two grounds. First, Defendants argue that Section 27A improperly prescribes a limitation period for the select group of Section 10(b) securities cases filed on or before June 19, 1991 without changing the underlying law, and thus it violates the separation of powers doctrine. Second, Defendants argue that Section 27A improperly invades the province of the judiciary by requiring Article III courts to reinstate dismissed actions, and thus eviscerate the principle of finality.

■ The Court is in agreement that Section 27A is unconstitutional for it violates established separation of powers principles, but not for the reasons articulated in Defendants' first argument. As discussed below, Section 27A in fact does effectuate a change in the law, and thus does not entail outcome determinative directions to the judiciary in a select group of cases. Section 27A, however, offends the separation of power principles in abolishing the retroactive application of the *Lampf* rule mandated as a matter of *constitutional* law by *Beam.* Section 27A is additionally violative of the constitution by undermining the finality of the judgment entered in this case, and the constitutionally protected rights which had vested in Defendants as a result of such judgment.

In their first argument, Defendants assert that Section 27A violates the separation of powers in that Congress directs courts to apply a rule of decision of its preference in a specified category of cases while leaving the underlying law unchanged.

Defendants' first argument is without merit. The fact that Congress chose to incorporate the statute of limitations existing in the applicable jurisdiction, rather than prescribe a specific statute of limitations for Section 10(b), has no bearing on whether a change has occurred in the law. *See Robertson v. Seattle Audubon Society,* —— U.S. ——, ——, 112 S.Ct. 1407, 1413, 118 L.Ed.2d 73 (1992) [3]. It is beyond question that the enactment of Section 27A effectuated a change in the law. *See, e.g., Hastie v. American Agri–Corp.,* No. SACV89–433 GLT, 1992 WL 388998 slip op. at 7–8 (C.D.Ca. April 20, 1992); *Hindler, Inc. et al v. Telequest, Inc., et al.,* Civ. No. 89–0847, slip op. at 2–3, 1992 WL 158631 (S.D.Cal. March 31, 1992); *VenturTech II. Limited Partnership et al. v. Deloitte Haskins & Sells, et al.,* 790 F.Supp. 574, 576 (E.D.N.C. February 24, 1992); *Ayers, et al. v. Sutliffe, et al.,* 1992 WL 207235, at *2, 1992 U.S.Dist. LEXIS 3219, at *4 (S.D.Ohio February 11, 1992); *James Bankard, et al. v. First Carolina Communications, Inc., et al.,* 1992 WL 3694, at *6, 1992 U.S.Dist. LEXIS 53, at *17–18 (N.D.Ill. January 3, 1992).

In their second argument, Defendants claim that dismissal with prejudice of Pacific Mutual's claims as time barred vested in them the fundamental "right of repose" which can not be taken away by subsequent legislation.

It is clear that statutes of limitations do not by themselves create "fundamental rights," and that they instead are necessary and pragmatic procedural devices "subject to a relatively large degree of

---

**3.** Defendants cite to cases where the courts found the separation of powers principle offended by Section 27A, because Congress had directed a particular outcome without changing the underlying law. *See In re Brichard Securities Litigation,* 788 F.Supp. 1098 (N.D.Cal.1992); *Bank of Denver v. Southeastern Capital Group, Inc.,* 789 F.Supp. 1092 (D.Col.1992); and *Johnston, et al. v. Cigna Corporation, et al.,* 789 F.Supp. 1098 (D.Col.1992). This Court is not persuaded by the reasoning of these cases, and instead aligns itself with the cases cited *supra* holding that by enactment of Section 27A, Congress effectuated a change in the law. However, as discussed below, this determination does not bring an end to the Court's consideration of the separation of powers principle and the constitutionality of Section 27A. *See infra* pages 113–15.

legislative control." *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). For this reason, courts have found no constitutional violation in applying Section 27A to cases where a final judgment has not been entered. *See Hastie, supra,* slip op. at 8; *VenturTech II, supra,* 790 F.Supp. at 576.

■ However, where a once existing statute of limitations results in the *final* adjudication of a case, a change in the applicable period of limitations if applied retroactively to reinstate that case implicates constitutional guarantees. *See Chase Securities Corp.,* 325 U.S. at 310, 316, 65 S.Ct. at 1140, 1143. The Supreme Court has held consistently that,

> It is not within the power of a legislature to take away rights which have once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

*McCullough v. Virginia,* 172 U.S. 102, 123–24, 19 S.Ct. 134, 141–42, 43 L.Ed. 382 (1898). *See also Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948); *Hodges v. Snyder,* 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923); *de Rodulfa v. United States,* 461 F.2d 1240, 1252 (D.C.Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). These cases have given rise to the so called "vested rights" doctrine. *Geor-*

*gia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805, 810 (11th Cir.1988), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989).

The United States urges this Court not to extend the same constitutional protection afforded a final judgment on the merits to a final judgment resulting from a mere technicality, such as a lapsed statute of limitations[4]. Some courts have upheld the constitutionality of Section 27A based on the distinction proposed by the United States, stating:

> Legislation to alter such a technical defense, and its application even to dismissed cases, goes far less to the heart of the judicial function than would a legislative attempt to reverse adjudications which had addressed the true merits of the disputes in question.

*Axel Johnson, Inc. v. Arthur Andersen & Co.,* 790 F.Supp. 476, 483 (S.D.N.Y.1992); *see also Brown v. The Hutton Group,* 795 F.Supp. 1307, 1316 (S.D.N.Y.1992).

Perhaps if it were only a question of degree—which type of legislative action more offends the independence of the judiciary—the proposed distinction would be tenable. Separation of powers, however, is not a subject open to compromise. A small encroachment on the judicial function threatens to unravel the constitutional design, even if in an incremental fashion. Supreme Court rulings on the inviolability of final judgments do not allow for such a distinction[5].

---

**4.** Along the same lines, the United States also argues that the Defendants do not have a "vested right" in a final judgment resulting from application of the statute of limitations, and relies on *Capello v. District of Columbia Board of Education,* 669 F.Supp. 14 (D.D.C.1987) for this proposition. In *Capello,* the court upheld the validity of an amendment to the Education of the Handicapped Act, 20 U.S.C. § 1415 (1986), which reinstated an attorney fee award previously held impermissible by the Supreme Court. The court applied the amendment to the application for fees *pending* before it, and found that while the application was pending, the government had not acquired a vested right in being free from payment of fees. *Id.* at 18–19. This case has no bearing on vested rights arising from final judgments based on the merits or otherwise.

**5.** The United States argues that the Supreme Court ruling in *United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), supports the type of distinction it proposes. In *Sioux Nation,* the Supreme Court upheld the validity of a congressional statute despite the fact that it allowed for the relitigation of claims against the United States by the Sioux Indians. In so finding, the Supreme Court stated that "Congress' mere waiver of the *res judicata* effect of a prior judicial decision rejecting the validity of a legal claim *against the United States* does not violate the doctrine of separation of powers." *Id.* at 407, 100 S.Ct. at 2736 (emphasis added). This ruling was premised on the government's moral duty to pay a debt for which it was obligated, and the recognition that Congress itself is the government and is entitled to waive *the protection to which it is*

It is important to recognize that it is not the statute of limitations which at any given point in time vests in the Defendants a constitutional right, but rather it is the finality of judgment which resulted from application of the *Lampf* rule which shelters the Defendants in this case. Two other courts which have considered the effect of Section 27A on the finality of judgments have similarly concluded that constitutional principles have been violated. *In re Brichard Securities Litigation*, 788 F.Supp. 1098, 1106–07 (N.D.Cal.1992); *Johnston, et al. v. Cigna Corporation, et al.*, 789 F.Supp. 1098, 1100 (D.Col.1992).

The third argument the Court will consider is one not pled directly by the Defendants, but one that figures prominently in the cases cited by them. The issue before the Court is the same as that facing the court in *TGX Corp. v. Simmons*, 786 F.Supp. 587 (E.D.La.1992),

> Once a court finds that a congressional enactment has changed the law, the court must then review the enactment itself, to assure that its substance does not constitute an impermissible legislative encroachment on the judicial power. Thus, because this court has determined that section 27(A) has changed the law, the court must now consider whether section 27(A) changes the law in a manner consistent with established separation of powers principles.

*Id.* at 592 n. 5.

■ It is a longstanding principle that Congress may not enact a law that contravenes the Supreme Court's judgment on questions of constitutional interpretation. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); *see also Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84, 102 S.Ct. 2858, 2878, 73 L.Ed.2d 598 (1982). It is alone the prerogative of the judiciary to determine constitutional principles, which can not be altered or amended by the legislature.

As discussed above, Section 27A is aimed at abolishing solely the retroactive application of the *Lampf* rule. Moreover, the retroactive application of *Lampf* is largely the result of another Supreme Court decision issued the same day as *Lampf* in the case of *Beam*. The dispositive question, therefore, is whether the retroactive application mandated by *Beam* should be accorded the status of a constitutional principle.

Two other courts have tackled this question in determining the constitutionality of Section 27A—an admittedly complicated task in view of the plurality opinion of the Justices in *Beam*. *See Brichard*, 788 F.Supp. at 1108–12; *TGX*, 786 F.Supp. at 592–94. Both courts have concluded that the *Beam* decision reflects judicial interpretation of the constitution, and that Section 27(A) to the extent that it undermines retroactive application of the *Lampf* rule is unconstitutional.

The United States, however, argues that *Beam* is not a constitutional decision, and that even if it is accorded such a status, it is binding only upon the judiciary and does not prohibit Congress from passing laws that alter the retroactive effect of court decisions.

In *Beam*, the Supreme Court held,

> The grounds for our decision today are narrow. They are confined entirely to an issue of choice of law: when the Court has applied a rule of law to the litigants in one case it *must* do so with respect to all others not barred by procedural requirements or res judicata.

— U.S. at ——, 111 S.Ct. at 2448 (emphasis added). In issuing this mandate to all courts, the Supreme Court largely relied on the equitable principle that similarly situated parties must be treated the same by the law, and on the case of *Griffith v. Kentucky*[6], 479 U.S. 314, 107 S.Ct. 708, 93

---

entitled. *Id.* at 397–98, 100 S.Ct. at 2731–32. In the instant case, where the government is not the party affected by a final judgment, *Sioux Nation* does not call for a distinction between final judgments resulting from adjudication on

the merits and those resulting from application of technical rules of procedure.

**6.** Unlike *Beam*, *Griffith* is not a plurality opinion and therefor lends itself to a more straight forward reading. *Griffith* explicitly premises its holding, identical to that of *Beam*, but in the

L.Ed.2d 649 (1987), which previously employed the same principle in the criminal context. Departure from such equitable treatment strikes at the heart of the power of precedent, and undermines the integrity of the judicial system. *Beam,* —– U.S. at –––– – ––––, 111 S.Ct. at 2447–51. In effect, the source of such a ruling can not be other than the constitution[7].

Yet the question remains whether this constitutional principle was meant only to bind the judiciary and give free reign to Congress to alter the retroactive application of laws once they have been applied retroactively by the judiciary. The language quoted above on its face imposes a constraint only upon the judiciary. But the reasoning underlying the mandate must by necessity extend to Congress as well. Congressional action eliminating retroactive application of laws already applied retroactively by the judiciary suffers from the *same* two constitutional infirmities: it threatens the integrity and independence of the judiciary, and fails to treat like parties alike[8].

■ This lengthy analysis, distilled, leads simply to this: The Supreme Court mandates retroactive application of laws once applied retroactively by the courts as a basic norm of *constitutional* adjudication. Thus, henceforth, any reformulation of this principle of retroactivity can occur solely at the hands of the judiciary, and not Congress[9]. This Court hereby aligns itself with the rulings in *TGX, supra,* and *Brichard, supra.*

This Court can not sustain the validity of Section 27A in view of the fact that (1) it undermines the constitutionally protected rights once vested in Defendants by virtue of the final judgment entered in this case; and (2) it encroaches on the Supreme Court's provision for retroactive application of the *Lampf* rule as a constitutional matter[10]. In sum, Section 27A is unconstitutional.

### III.  *Conclusion*

Based on the foregoing reasons, Plaintiff Pacific Mutual's Motion to Reinstate Action is DENIED.

SO ORDERED.

criminal context, on "basic norms of constitutional adjudication." 479 U.S. at 322, 107 S.Ct. at 712. These norms implicate two principles. First, the integrity of judicial review requires that the courts apply the same rule to all similar cases pending on direct review; and second, similarly situated parties must be treated the same by the law. *Id.* at 322–23, 107 S.Ct. at 712–13.

7. Three of the Justices concurring in the judgment of the Court in *Beam,* in a six to three ruling, *explicitly* premise their holding on the constitution: Justices Blackmun, Marshall and Scalia. —– U.S. at –––– – ––––, 111 S.Ct. at 2449–51.

8. This second infirmity takes life largely from the Court's earlier finding that final decisions can not be reinstated by Congress. Thus, parties subject to final judgments are precluded from reinstating their Section 10(b) claims, whereas "similarly situated" parties in pending actions can reassert their Section 10(b) claims.

9. The United States argues that it is well settled that Congress can enact legislation to reverse the effect of a Supreme Court decision and require that the new law be applied retroactively to cases filed before that Supreme Court decision. *See, e.g., Tonya K. v. Board of Education of Chicago,* 847 F.2d 1243, 1247–48 (7th Cir.1988); *Moore v. District of Columbia,* 666 F.Supp. 263, 264–65 (D.D.C.1987), *aff'd,* 907 F.2d 165 (D.C.Cir.1990) (en banc). These cases, however, are inapposite to the instant case. It is uniquely in *constitutional* pronouncements by the judiciary that the hands of Congress are tied.

10. On this same basis, Section 27A(a), which is not directly before us, is also constitutionally infirm by removing the retroactive application of the *Lampf* rule to pending cases. Section 27A(a) reads,

**EFFECT ON PENDING CAUSES OF ACTION.**—The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed in June 19, 1991.