IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-3375

_____

TGX CORP.,

                              Plaintiff,

                 versus

GLORIA ANNETTE TURNER SIMMONS, ET AL.,

                              Defendants-Appellants
                              Cross-Appellees,

                 versus

GREENWICH INSURANCE COMPANY, ET AL.,

                              Defendants-Appellees
                              Cross-Appellants.

* * * * * *

GAYLON D. SIMMONS, ET AL.,

                              Plaintiffs-Appellants
                              Cross-Appellees,

                 versus

J.C. TEMPLETON, ET AL.,

                              Defendants-Appellees
                              Cross-Appellants.

_____

Appeal from the United States District Court for
the Eastern District of Louisiana
_____

* * * * * *

PACIFIC MUTUAL LIFE INSURANCE CO.,

                              Plaintiff-Appellant,

                    versus

FIRST REPUBLICBANK CORP., ET AL.,

                              Defendants-Appellees.

_____

Appeal from the United States District Court for
the Northern District of Texas
_____

(July 20, 1993)

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit
Judges.

REAVLEY, Circuit Judge:

Plaintiffs who suffered dismissals in two separate
securities-fraud cases asked the district courts to reinstate
their claims under § 27A(b) of the Securities Exchange Act, 15
U.S.C. § 78aa-1(b), which Congress enacted in November 1991.  The
district courts denied these motions after holding that § 27A(b)
violates the Constitution by disturbing final judgments and
invading judicial authority.  We conclude that the legislation is
constitutional and we reinstate the plaintiffs' suits.

## I. BACKGROUND

A. PACIFIC MUTUAL LIFE INS. CO. V. FIRST REPUBLICBANK CORP., ET AL.

In March 1991, Pacific Mutual Life Insurance Company (PMLI)
sued investment bankers and accountants (collectively PMLI

Defendants)[1] for securities fraud under § 10(b) of the 1934 Securities Exchange Act (1934 Act), 15 U.S.C. § 78j(b).  PMLI's claims arise from the June 1987 merger of InterFirst Corporation and RepublicBank Corporation, PMLI's purchase of InterFirst securities in July and September 1987 for approximately $8 million, and the PMLI Defendants' facilitation of those transactions.

From long before PMLI purchased the securities to the time after PMLI filed its suit, this court determined the statute of limitations for implied private actions under § 10(b) according to analogous state law.  When PMLI filed its suit in the United States District Court for the Northern District of Texas, our precedent recognized that the four-year limitations period applicable to fraud actions in Texas also governs § 10(b) actions filed there.  *In re Sioux, Ltd., Sec. Litig. v. Coopers & Lybrand*, 914 F.2d 61, 64 (5th Cir. 1990).  For that reason, although the PMLI Defendants filed dispositive motions under FED. R. CIV. P. 9(b) and 12(b)(6), they did not contest the timeliness of PMLI's suit.

While these motions awaited the district court's consideration, the Supreme Court issued *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 111 S.Ct. 2773 (1991).  *Lampf* implicitly overrules *Sioux, Ltd.* and many similar cases in other circuits with its holding that the Securities Exchange Act as

---

[1] The PMLI Defendants are Morgan Stanley & Co., Goldman Sachs & Co., Ernst & Young & Co., and Salomon Brothers Inc.

written in 1934, not state law, establishes the limitations period for § 10(b) suits. *Id.* at 2780. The Court read the Securities Exchange Act of 1934 to establish a uniform rule that "[l]itigation instituted pursuant to § 10(b) ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.* at 2782 (1-and-3 rule).

On the same day that the Court rendered *Lampf*, it decided *James B. Beam Distilling Co. v. Georgia*, 111 S.Ct. 2439 (1991). A plurality of the *Beam* Court held that Georgia's Supreme Court erred by "refus[ing] to apply a rule of federal law retroactively after the case announcing the rule has already done so." *Id.* at 2446. *Beam* teaches that "when th[is] Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.* at 2448.

Because the *Lampf* Court applied the 1-and-3 rule to eliminate Gilbertson's § 10(b) claim, *Beam* required courts to apply the limitation rule announced in *Lampf* to pending claims under § 10(b). The PMLI Defendants promptly brought *Lampf* and *Beam* to the district court's attention, and the court dismissed PMLI's § 10(b) claims with prejudice in August 1991. The district court based its dismissal on the fact that "the face of [PMLI's complaint establishes] that this action was filed more than three years after the alleged misrepresentations or

4

omissions upon which [PMLI's] claim rests."  Recognizing no way

around *Lampf* and *Beam*, PMLI did not appeal.

Three months later, however, Congress provided a way around

*Lampf* and *Beam* by passing § 27A, which provides:

> (a) Effect on Pending Causes of Action. ))
> The limitation period for any private civil
> action implied under section 10(b) of this
> Act that was commenced on or before June 19,
> 1991, shall be the limitation period provided
> by the laws applicable in the jurisdiction,
> including principles of retroactivity, as
> such laws existed on June 19, 1991.
>
> (b) Effect on Dismissed Causes of Action.  ))
> Any private civil action implied under
> section 10(b) of this Act that was commenced
> on or before June 19, 1991 ))
> > (1) which was dismissed as time barred
> > subsequent to June 19, 1991, and
> > (2) which would have been timely filed
> > under the limitation period provided by
> > the laws applicable in the jurisdiction,
> > including principles of retroactivity,
> > as such laws existed on June 19, 1991,
> shall be reinstated on motion by the
> plaintiff not later than 60 days after
> [December 19, 1991].

1934 Act, § 27A (amended by P.L. 102-242 (December 19, 1991)),

*codified at* 15 U.S.C. § 78aa-1.  On January 31, 1992, PMLI filed

a motion to reinstate pursuant to § 27A(b).  The PMLI Defendants

challenged the constitutionality of § 27A(b), and the district

court admitted the United States as an intervenor to explain why

§ 27A is constitutional.  After considering the parties' written

submissions, the district court held: 1) § 27A(b) contravenes due

process by divesting the PMLI Defendants of their final judgment;

and 2) § 27A contravenes the constitutionally-mandated

retroactivity of new legal rules recognized in *Beam*.  PMLI

5

appeals from the district court's denial of its motion to reinstate.

B. SIMMONS, ET AL. V. TGX CORP., ET AL.

In 1987, TGX Corporation sued Gaylon Simmons[2] over a $21 million stock purchase contract which the parties executed in November 1986, and Simmons filed a counterclaim against TGX under § 10(b).  TGX filed for bankruptcy protection in 1990, staying the counterclaim.  Simmons then filed a separate § 10(b) suit in March 1990 against attorneys, accountants, and directors (collectively TGX Defendants)[3] who facilitated the stock purchase.

Simmons sued the TGX Defendants in the United States District Court for the Eastern District of Louisiana.[4]  The parties disputed whether Simmons met Louisiana's two-year prescriptive period for securities fraud, which this court has held applicable to § 10(b) claims.  *Jensen v. Stellings*, 841 F.2d 600, 606 (5th Cir. 1988).  The Supreme Court rendered *Lampf* and *Beam* before the district court ruled on the parties' limitation dispute.

---

[2] Gloria Simmons joins Gaylon Simmons as a party to this dispute.

[3] The TGX Defendants are J.C. Templeton, Joe H. Foy, Harry V. Carlson, Robert Ted Enloe, III, W.A. Griffin, Thomas L. Kister, Leonard Leon, Edward T. Cotham, Bracewell & Patterson, BDO Seidman, Greenwich Insurance Co., and William M. Templeton. Simmons amended his complaint to add Greenwich and W.M. Templeton as defendants in May 1991.

[4] The court consolidated this suit with the suit between TGX Corporation and Simmons.

The TGX Defendants informed the district court that Simmons sued them in March 1990, and his complaint alleges November 1986 misdeeds. They argued that these facts entitled them to dismissal under *Lampf's* 1-and-3 rule. Simmons did not dispute the effect of *Lampf*, and the district court directed the TGX Defendants to draft a judgment and order. That document recited:

> all of the federal claims asserted are time-barred, and the Defendants are entitled to judgment on those claims as a matter of law; and [the court finds that] final judgment should be entered....
>
> [P]laintiffs' claims ... under ... the Securities Exchange Act of 1934 are hereby dismissed with prejudice.

Simmons asked the district court to delete "with prejudice" from the judgment to avoid any preclusive effect, and the court obliged before signing it in August 1991. Simmons did not appeal this judgment.

Simmons sought the deletion from the August 1991 judgment because he thought that he could avoid *Lampf* by adding the TGX Defendants as parties to the 1987 counterclaim against TGX, and he did not want the dismissal in the March 1990 suit to preclude him from doing so. Simmons's idea ultimately proved unsuccessful,[5] and the district court entered another judgment

---

[5] A magistrate permitted Simmons to amend his 1987 counterclaim for purposes of procedure only, but the district court held that the additional claims did not relate back to the 1987 claims, so those claims were still untimely. In its September 1991 minute entry explaining why Simmons's § 10(b) claims were still untimely, the district court stated that the August 1991 judgment did not preclude the amendment to the 1987 counterclaim because the court entered the August 1991 judgment without prejudice.

7

dismissing Simmons's § 10(b) claims against the TGX Defendants in October 1991. Simmons did not appeal this October 1991 judgment.

With renewed hope from § 27A(b), Simmons filed a Motion to Reinstate the March 1990 suit in January 1992. The parties disputed both the applicability and constitutionality of § 27A(b). In March 1992, the district court held: 1) the court dismissed Simmons's March 1990 § 10(b) suit "as time barred" within the meaning of § 27A(b) despite the fact that the court dismissed the suit without prejudice in August 1991; and 2) Simmons timely filed his § 10(b) claims under Louisiana's two-year prescription period and *Jensen*; but 3) § 27A contravenes the constitutionally-mandated retroactivity of new legal rules recognized in *Beam*. *TGX Corp. v. Simmons*, 786 F. Supp. 587 (E.D. La. 1992).

In April 1992, Simmons asked for a new trial on his reinstatement motion. In May 1992, the district court denied Simmons's motion for a new trial after holding that, in addition to *Beam's* implications, § 27A(b) violates due process principles by upsetting final judgments. Simmons appeals from the district court's denials of his motion to reinstate and his new-trial motion. The TGX Defendants cross-appeal the district court's ruling that Simmons's March 1990 suit falls within the scope of § 27A(b) even though the district court dismissed that suit without prejudice in August 1991. The United States intervenes to defend the constitutionality of § 27A(b).

8

## II. ANALYSIS

*Simmons* and *PMLI* ultimately raise the same novel constitutional questions, so we decide both appeals in this opinion.  We review the district courts' decisions concerning the meaning and constitutionality of § 27A(b) *de novo.  Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993); *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1567 (9th Cir. 1993).  We proceed without the benefit of prior appellate attention to § 27A(b).

A. WHETHER A CONSTITUTIONAL SECTION 27A(b) HELPS SIMMONS

The TGX Defendants argue that § 27A(b) does not afford Simmons any relief even if it is constitutional, because Simmons asked the district court to dismiss his March 1990 claims under § 10(b) without prejudice.  But all of their arguments require an inaccurate reading of § 27A(b).

Congress wrote § 27A(b) to prevent courts from applying *Lampf* to cases that plaintiffs filed before the Court rendered *Lampf*.  Section 27A(b) states a specific procedure (motion for reinstatement within 60 days of enactment) to restart "[a]ny" § 10(b) claim "commenced on or before June 19, 1991 ... which was dismissed as time barred" after *Lampf*, but "would have been timely filed" before *Lampf*.

What little legislative history exists for § 27A confirms that Congress intended to obliterate *Lampf* and *Beam* for all cases

9

filed before the Court rendered *Lampf*.[6]  *See, e.g.,* 137 CONG. REC. S17382 (daily ed. Nov. 21, 1992) (Sen. Riegle, § 27A sponsor) ("The language of the bill is designed to return plaintiffs and defendants to exactly the position that they had on June 19, 1991," the day before the Court rendered *Lampf*.); *id.* at H11813 (daily ed. Nov. 26, 1991) (Rep. Markey) ("The language ... unambiguously reverses the *Lampf* ruling's application of the 1-year and 3-year statute of limitations...."). The Supreme Court itself has recognized as much. *See Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 1993 WL 179262 at *5 ("Congress ... limit[ed] the retroactive effect of [*Lampf* by directing] the applicable 'limitation period for any private civil action implied under [§ 10(b)] that was commenced on or before June 19, 1991....'"); *id*. at *11 (Thomas, J., dissenting) (Congress "alter[ed] the retroactive effect of the 10b-5 limitations period that we adopted in *Lampf*."). We know of no evidence or reason that supports a narrower reading of § 27A. *Compare Herman & MacLean v. Huddleston*, 103 S. Ct. 683, 689 (1983) (interpreting securities laws to "further[] their broad remedial purposes").

*1. Time-Bar Dismissal*

The TGX Defendants seize on the district court's statement that Simmons did not voluntarily dismiss his § 10(b) claims under FED. R. CIV. P. 41 by asking the court to dismiss those claims

---

[6] For a comprehensive treatment of the legislative history of § 27A, see Anthony Michael Sabino, *A Statutory Beacon or a Relighted* Lampf?  *The Constitutional Crisis of the New Limitary Period for Federal Securities Law Actions*, 28 TULSA L.J. 23, 27-30 (1992).

without prejudice in August 1991.  *Simmons*, 786 F. Supp. at 590.
They argue that the court's statement is erroneous, and once we
recognize that Simmons voluntarily dismissed his claims, we must
hold that the claims were not "dismissed as time barred" under §
27A(b)(1).

But even if Simmons chose to dismiss his § 10(b) claims, the
record conclusively establishes that he did so because *Lampf*
rendered those claims time barred.  The district court's August
1991 judgment states this very fact.  We interpret "dismissed as
time barred" in § 27A(b) to include all cases that were dismissed
because of *Lampf's* time bar.  Simmons satisfies this but-for
scrutiny.

*2. Nullification*

The TGX Defendants have found language in our cases in which
this court states that the effect of a voluntary dismissal is to
"put the plaintiff in the same legal position in which he would
have been had he never brought the first suit."  *Taylor v. Bunge
Corp.*, 775 F.2d 617, 619 (5th Cir. 1985).  They would have us
apply this language, irrespective of the reasons for and context
in which we used it, to hold that Simmons's suit vanished upon
voluntary dismissal, leaving nothing to reinstate by operation of
§ 27A(b).

But there is no rule that makes all voluntarily dismissed
cases absolutely null for all purposes.  This court has permitted
a district court to resurrect a voluntarily dismissed case under
FED. R. CIV. P. 60.  *Boehm v. Office of Alien Property*, 344 F.2d

11

194 (5th Cir. 1965). And even if there were an absolute-nullity rule, we could not apply it in the face of contrary congressional intent unless we could articulate a constitutional basis for doing so. As we have explained, Congress intended broad relief from *Lampf* for any § 10(b) claim "that was commenced on or before June 19, 1991." Simmons commenced his § 10(b) claims against the TGX Defendants on March 8, 1990, which places those claims within the ambit of § 27A(b).

*3. Avoidance*

The TGX Defendants cite cases holding that courts should refrain from deciding constitutional questions if possible. *See, e.g., Daylo v. Administrator of Veterans' Affairs*, 501 F.2d 811, 819 (D.C. Cir. 1974) ("[W]hen one interpretation of a statute would create a substantial doubt as to the statute's constitutional validity, the courts will avoid that interpretation absent a 'clear statement' of a contrary legislative intent."). They accompany these cites with creative readings of § 27A(b) that would avoid constitutional questions, while conveniently killing Simmons's claims.[7] None of their

_____

[7] For example, the TGX Defendants suggest that Congress really accomplished nothing whatsoever in § 27A because the "laws applicable ... as such laws existed on June 19, 1991," which § 27A directs courts to apply, are defined by the Securities Exchange Act of 1934, just as *Lampf* holds. They also suggest that § 27A only replaces the one-year limitations period discussed in *Lampf*, and does not affect *Lampf's* direction that § 10(b) actions be further limited by a three-year statute of repose.

The PMLI Defendants suggest that Congress only meant § 27A(b) to reinstate actions that were dismissed from a district court, but still pending on appeal at the time a party files a

12

readings respects Congress' unmistakable intent to keep *Lampf*
from operating retroactively in cases that were dismissed as time
barred.[8]  We will not ignore the obvious meaning of § 27A simply
to avoid the constitutional questions that Congress has created.

*4. Claim Preclusion*

Finally, the TGX Defendants point to the district court's
October 1991 dismissal of Simmons's amended counterclaim in the
TGX suit.  They argue that the court dismissed this amended
counterclaim with prejudice, and the amended counterclaim raised
the same claims that Simmons pursues through his January 1992
reinstatement motion under § 27A(b), so claim preclusion bars any
reinstatement of Simmons's March 1990 claims regardless of §
27A(b).

But the TGX Defendants have waived any claim-preclusion
argument by failing to raise it in the district court.  Our
thorough search of the record reveals no mention of claim
preclusion by the court's October 1991 judgment, and we refuse to
consider it for the first time on appeal.  *See Russell v.
SunAmerica Sec., Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992)
(failure to present res judicata argument to district court
usually prevents appellate court from addressing the issue); *see
also Aluminum Prod. Distrib., Inc. v. Aaacon Auto Transp., Inc.*,

---

motion for reinstatement.

[8] *Cf. Georgia Ass'n of Retarded Citizens v. McDaniel*, 855
F.2d 805, 809 (11th Cir. 1988) (Though Congress intended a
statute to control cases "pending" before enactment of the
statute, the court found no clear intent that the statute would
apply to pending cases that a court had also finally dismissed.).

549 F.2d 1381, 1384 (10th Cir. 1977) (where a party asserted res judicata for the first time in a new-trial motion, "the district court was not bound by any [prior] judgment," and the appellate court refused to consider any preclusive effect on appeal).

We come to the central question of both cases: the constitutionality of § 27A(b).

B. WHETHER THE CONSTITUTION PROTECTS INDIVIDUALS OR THE JUDICIARY FROM § 27A(B)

Congress' authority to establish limitations periods for securities-fraud claims cannot be disputed. *See Musick*, 1993 WL 179262 at \*4-\*5. Section 27A(b) is controversial exclusively for its retroactivity.[9] While the Constitution proscribes retroactive criminal legislation, it contains no analogous civil provision. U.S. CONST. art. I, § 9; *Mahler v. Eby*, 44 S. Ct. 283, 286 (1924).

The PMLI Defendants and TGX Defendants (collectively Defendants) argue that the Supreme Court's precedent and the structure of the Constitution establish that § 27A(b) unconstitutionally affects individuals and the federal judiciary. The district courts agreed with them. We do not.

---

[9] A retroactive statute "gives to preenactment conduct a different legal effect from that which it would have had without the passage of the statute." Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 HARV. L. REV. 692, 692 (1960) (hereinafter *Constitutionality of Retroactive Legislation*).

14

*1. Individual Rights*

The Constitution's Fifth Amendment prohibits Congress from depriving any person of property without due process of law. The Defendants claim that § 27A(b) contravenes the Fifth Amendment by compromising two of their property rights as recognized by the Supreme Court.

a. The Right to a Final, Nonappealable Judgment

Each of the defendants in these cases (collectively Defendants) possessed final, nonappealable judgments dismissing the plaintiffs' § 10(b) claims. Unlike § 27A(a), § 27A(b) effectively nullifies these judgments, so the cases addressing the constitutionality of § 27A(a) have nothing to say about whether § 27A(b) unconstitutionally abrogates any right to a final judgment.[10] For guidance on this question, we turn to the Supreme Court.

The Defendants rely upon *McCullough v. Virginia*, 19 S. Ct. 134 (1898) and its progeny to argue that § 27A(b) cannot constitutionally take away their judgments. McCullough obtained a judgment against Virginia in 1892, but a Virginia appellate court reversed that judgment. *Id.* at 135. Between the time of

---

[10] The only appellate courts to rule on the constitutionality of § 27A to date have upheld it as a means of changing the limitations period in *pending* § 10(b) cases. *Cooke v. Manufactured Homes, Inc.*, 1993 WL 248257, at *8 (4th Cir. July 9, 1993); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 1993 WL 156464, at *3 & n.11 (1st Cir. May 19, 1993); *Berning v. A.G. Edwards & Sons*, 990 F.2d 272, 279 (7th Cir. 1993); *Gray*, 989 F.2d at 1574; *Anixter v. Home-State Prod. Co.*, 977 F.2d 1533, 1547 (10th Cir. 1992); *Henderson v. Scientific-Atlanta, Inc.*, 971 F.2d 1567, 1570 (11th Cir. 1992).

judgment and its reversal, Virginia's legislature repealed the statute that authorized McCullough's suit.  When the Supreme Court agreed to hear McCullough's appeal, Virginia asked the Court to apply the new law repealing authorization for the suit and dismiss McCullough's appeal.  *Id.* at 142.  The Court emphatically refused Virginia's request:

> It is not within the power of a legislature
> to take away rights which have been once
> vested by a judgment.  Legislation may act on
> subsequent proceedings, may abate actions
> pending, but when those actions have passed
> into judgment the power of the legislature to
> disturb the rights created thereby ceases.

*Id.*[11]

Our research indicates that the Court has never applied this holding in *McCullough* to decide another case.  Moreover, both before and after *McCullough*, the Court has decided cases with identical relevant facts according to a different rule.[12]

---

[11] Before *McCullough*, the Court did not adhere to such an absolute rule.  *See Freeland v. Williams*, 9 S. Ct. 763, 767-68 (1889) (sustaining a state law which invalidated a final judgment for damages in a trespass action); *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 431 (1855) (accepting "*as a general proposition* ... especially as it respects adjudication upon the private rights of parties," that legislation "cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby in favor of the plaintiff") (emphasis added).

[12] In *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103 (1801), Chief Justice Marshall explained:

> [I]f, subsequent to the judgment, and before
> the decision of the appellate court, a law
> intervenes and positively changes the rule
> which governs, the law must be obeyed, or its
> obligation denied.... [T]he court must decide
> according to existing laws, and if it be
> necessary to set aside a judgment, rightful

16

Accordingly, we must carefully scrutinize *McCullough's* rationale in assessing the precedential value of its broad statement concerning rights vested by judgment.

The *McCullough* Court did not explicitly ground its holding in the Constitution. In subsequent decisions, however, the Court explained that the Fifth Amendment's Due Process Clause is the source of constitutional protection for judgments, including the one that belonged to McCullough. *E.g., Hodges v. Snyder*, 43 S. Ct. 435, 436 (1923). Thus, we decide this case according to the jurisprudence that the Court has developed to describe how due process protects individuals from retroactive legislation. The Defendants stress a "vested rights" theory exemplified by

> when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.

*Id.* at 110. Almost two hundred years later, *Schooner Peggy* remains good law. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 110 S. Ct. 1570, 1581-82 (1990) (Scalia, J., concurring) (reciting history of the Court's adherence to *Schooner Peggy* while advocating a rule requiring a clear manifestation of legislative intent before courts will recognize retroactive legislation)*; see also Griffith v. Kentucky*, 107 S. Ct. 708, 712 n.6 (judgment is final for purposes of the constitutional prohibition on retroactive criminal legislation only when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied"). But in *McCullough*, the Court ignored *Schooner Peggy* and the fact that McCullough's case was pending on appeal when Virginia's legislature changed the law, deciding instead that the law applicable to a case "freezes" at the time the trial court renders its judgment. 19 S. Ct. at 142 ("The writ of error to the court of appeals of [Virginia] brought the validity of [the trial court's] judgment into review, and the question presented to that court was whether, *at the time it was rendered,* it was rightful or not.") (emphasis added). The *McCullough* Court may have understood *Schooner Peggy* to apply only to Article III courts, and ignored it for this reason.

17

*McCullough*, but we find talk of vested rights to merely state due process conclusions, and thus unnecessarily confusing.  The Court explains:

> the words "vested right" are nowhere used in the constitution, neither in the original instrument nor in any of the amendments to it.  We understand very well what is meant by a vested right to real estate, to personal property, or to incorporeal hereditaments.  But when we get beyond this, although vested rights may exist, they are better described by some more exact term, as the phrase itself is not one found in the language of the constitution.

*Campbell v. Holt*, 6 S. Ct. 209, 213 (1885).  A seminal treatise recognizes what has happened when courts have departed from the Constitution in search of an amorphous "vested rights" theory:

> Judicial opinions are full of standards which purport to govern decision[s] concerning the legality of retroactive application of new law.  On close examination most of them turn out to be little more than ways to restate the problem.  Probably the most hackneyed example of such a rule is to the effect that a law cannot be retroactively applied to impair vested rights.  But the statement of that proposition does nothing more than focus attention on the question concerning what circumstances qualify a right to be characterized as "vested."

NORMAN J. SINGER, 2 SUTHERLAND STATUTORY CONSTRUCTION § 41.05, at 364-65 (C. Sands 4th ed. 1986); *accord Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. at 696.  We waste no further time with the "vested rights" language, and turn to due process.

When the Court rendered *McCullough*, it may have held the absolutist view, indicated by the statement quoted above, that the Due Process Clause protects all final judgments from

18

retroactive legislation.  But the Court has retreated from this view.  The Court permits retroactive legislation to annul private judgments that affect public rights, *Hodges*, 43 S. Ct. at 436, or private injunctions upon changed circumstances.  *System Federation No. 91, Ry. Employees' Dept., AFL-CIO v. Wright*, 81 S. Ct. 368, 371 (1961) (modifying a permanent injunction to conform with subsequently-enacted amendments to the Railway Labor Act).  The dispositive retreats from any absolute *McCullough* rule, however, come in *Fleming v. Rhodes*, 67 S. Ct. 1140 (1947) and *Usery v. Turner Elkhorn Mining Co.*, 96 S. Ct. 2882 (1976).

In *Fleming*, landlords obtained valid final judgments from a Texas court entitling them to evict certain tenants upon the lapse of wartime price regulations.  Congress cured the lapse within two months, and included a law which prohibited the eviction of the tenants with its extension of price regulations.  67 S. Ct. at 1141 n.3.  A price-control administrator asked a federal district court to apply this law to enjoin the landlords and state officials from executing their judgments, but the district court held that the federal statute violated the Fifth Amendment's Due Process Clause.  *Id.* at 1141-42.  The Supreme Court reversed, explaining that

> Federal regulation of future action based
> upon rights previously acquired by the person
> regulated is not prohibited by the
> Constitution.  So long as the Constitution
> authorizes the subsequently enacted
> legislation, the fact that its provisions
> limit or interfere with previously acquired
> rights does not condemn it.  Immunity from
> federal regulation is not gained through
> forehanded contracts.  Were it otherwise the

19

paramount powers of Congress could be nullified by "prophetic discernment." *The rights acquired by judgments have no different standing.* The protection of housing accommodations in defense-areas through the price control acts may be accomplished by the [administrator] notwithstanding these prior judgments. The preliminary injunctions should have been granted.

*Id.* at 1144 (footnotes omitted and emphasis added), *cited with approval in Federal Housing Admin. v. Darlington, Inc.*, 79 S. Ct. 141, 146 & n.6 ("[A]ny 'vested' rights by reason of the state judgment were acquired subject to the possibility of their dilution through Congress' exercise of its paramount regulatory power.").

*Usery* arose from Congress' efforts to provide compensation to coal miners and their survivors. The disputed legislation establishes an administrative procedure under which victims of the disease known as "black lung" and their survivors may collect benefits from coal companies, mandates certain presumptions against the coal companies, and operates retroactively. 96 S. Ct. at 2889-90. The companies argued that the statute unconstitutionally deprived them of their property because it imposed upon them "an unexpected liability for past, completed acts that were legally proper and, at least in part, unknown to be dangerous at the time." *Id.* at 2892. The Court responded:

It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the

20

> legislature has acted in an arbitrary and
> irrational way....
>
> To be sure, insofar as the Act requires
> compensation for disabilities bred during
> employment terminated before the date of
> enactment, the Act has some retrospective
> effect.... And it may be that the liability
> imposed by the Act for disabilities suffered
> by former employees was not anticipated at
> the time of actual employment. But our cases
> are clear that legislation readjusting rights
> and burdens is not unlawful solely because it
> upsets otherwise settled expectations. See
> *Fleming v. Rhodes*....

*Id.* at 2892-93 (citations and footnotes omitted). The Court then
assessed the practical consequences of the Act's retrospective
imposition of liability and concluded that this imposition "is
justified as a rational measure to spread the costs of the
employees' disabilities to those who have profited from the
fruits of their labor...." *Id.* at 2893.

The Defendants would have us distinguish *Fleming* and *Usery*
on the ground that the Court in neither case permitted a
retroactive statute to upset a final, nonappealable judgment;
they maintain that the rights created by judgments are sacrosanct
above other due process rights, and that the *McCullough* rule
endures for judgment-based rights. This argument fails to
distinguish *Fleming* or *Usery*.

While the *Fleming* Court noted that the retroactive
legislation which it upheld only compromised the landlords'
ability to *enforce* their judgment rights as opposed to any
compromise of the rights themselves, 67 S. Ct. at 1144, the Court
has also recognized (as do we) that the removal of a remedy has

21

the same effect as the removal of a right. *See Chase Sec. Corp. v. Donaldson*, 65 S. Ct. 1137, 1142 (1945) ("[I]t is troublesome to sustain as a 'right' a claim that can find no remedy for its invasion."); *Lynch v. United States*, 54 S. Ct. 840, 844 (1934) ("Contracts between individuals or corporations are impaired ... whenever the right to enforce them is taken away or materially lessened.").

*Usury* teaches that Congress can, under some circumstances, create private civil liability for past acts. We recognize nothing in the *Usery* Court's analysis that would limit Congress from retroactively creating liability for securities fraud if it justified this retroactive effect with reasons comparable to those recited in *Usery*. *See* 96 S. Ct. at 2893-94. Because *Usery* allows Congress to avert questions of judgment rights altogether, there is no due process reason why Congress cannot reach the same result by upsetting a judgment.

Moreover, FED. R. CIV. P. 60(b) itself destroys the Defendants' position that final, nonappealable judgments confer sacrosanct due-process rights on individuals. Rule 60(b) permits courts to "relieve a party ... from a final judgment ... for ... any ... reason justifying relief from the operation of the judgment." The Court has repeatedly acknowledged that Rule 60 "provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *Liljeberg v. Health Servs. Acquisition Corp.*, 108 S. Ct. 2194, 2204 (1988) (citation omitted). The

22

Tenth Circuit is especially likely to disturb final judgments under Rule 60(b) upon subsequent changes in the law: "a change in relevant case law by the United States Supreme Court warrants relief under Fed. R. Civ. P. 60(b)(6)." *Adams v. Merrill Lynch Pierce Fenner & Smith*, 888 F.2d 696, 702 (10th Cir. 1989).

Rule 60(b) has spawned an extensive jurisprudence; no doubt remains as to its constitutionality. And we know of nothing to indicate that an individual holds any greater constitutional right against one branch of government than she holds against another. This reasoning establishes that, despite *McCullough*, judgments that are final and nonappealable do not create rights that are absolutely immune from congressional manipulation.

It is not our place to state general rules as to when the Due Process Clause permits Congress to disturb judgments. We limit our inquiry to the facts before us. Fortunately, the Court provides ample guidance in *Donaldson*. *See* 65 S. Ct. at 1141-43.

Donaldson sued a securities broker under Minnesota statutory and common-law fraud theories. A state judge ruled that the broker violated the Minnesota securities statute and that Donaldson timely filed his claim because his absence from the state tolled Minnesota's limitations period. Minnesota's Supreme Court held the latter ruling erroneous, and remanded for further proceedings. *Id.* at 1138. Meanwhile, Minnesota's legislature enacted a limitations statute which permitted any securities fraud claim to be brought within one year of the statute if the securities were delivered more than five years before the

23

statute's enactment date.  Donaldson met the five year delivery requirement and availed himself of the new statute in Minnesota's courts.  *Id.* at 1139.  The broker appealed to the Supreme Court, arguing that Minnesota deprived him of due process by applying the new limitations period to him.  We quote extensively from the Court's unanimous refutation of this argument because we find it applicable here:

> Statutes of limitation find their justification in necessity and convenience rather than in logic.  They represent expedients, rather than principles.  They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.  ...  They represent a public policy about the privilege to litigate.  Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual.  He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.
>
> ....
>
> ....  The Fourteenth Amendment [Due Process Clause] does not make an act of state legislation void merely because it has some retrospective operation. ...  Some rules of law probably could not be changed retroactively without hardship and oppression ....  Assuming that statutes of limitation like other types of legislation could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment.  Nor has the appellant pointed out

24

> special hardships or oppressive effects which
> result from lifting the bar in this class of
> cases with retrospective force.  This is not
> a case where appellant's conduct would have
> been different if the present rule had been
> known and the change foreseen.  It does not
> say, and could hardly say, that it sold
> unregistered stock depending on a statute of
> limitation for shelter from liability.  The
> nature of the defenses shows that no course
> of action was undertaken by appellant on the
> assumption that the old rule would be
> continued.  When the action was commenced, it
> no doubt expected to be able to defend by
> invoking Minnesota public policy that lapse
> of time had closed the courts to the case,
> and its legitimate hopes have been
> disappointed.  But the existence of the
> policy at the time the action was commenced
> did not, under the circumstances, give the
> appellant a constitutional right against
> change of policy before final adjudication.

*Id.* at 1142-43 (citations and footnotes omitted).

The Defendants understandably stress the last phrase of the quoted passage, and observe that while *Donaldson* permits a legislature to retroactively change limitations periods, it says nothing about whether a legislature can divest a party of a final judgment.  The problem with this argument is that *Donaldson* predates both *Fleming* and *Usery*, which we understand to establish that Congress may upset final judgments under some circumstances.  To decide whether § 27A(b) can constitutionally upset final judgments, we observe that the Court in *Donaldson*, *Fleming*, and *Usery* invariably considered *whether the legislature acted rationally toward the party asserting a due process violation* to

25

determine whether retroactive legislation deprived those parties of rights without due process.[13]

In *Fleming*, the Court understood the landlords asserting due process rights to have taken advantage of an inadvertent two-month lapse in price-control regulation of defense-area housing during wartime, and held that Congress could rationally exercise its commerce authority to deny them this advantage. 67 S. Ct. at 1143-44. In *Usery*, the Court analyzed the effect of the retroactive legislation on the coal companies to determine whether the legislation "me[t] the test of due process" and concluded that the legislation was "justified as a rational

---

[13] Even before *Usery*, one commentator comprehensively surveyed the Court's decisions concerning the constitutionality of retroactive legislation, and concluded that three inquiries, none of them dispositive, inform the Court's rationality decisions: 1) the nature of the public interest served by the retroactive enactment; 2) the extent of the abrogation of the preenactment right; and 3) the nature of the right affected by a retroactive statute. *Constitutionality of Retroactive Legislation*, 73 HARV. L. REV. at 697, 711, 717. He considers a statute that retroactively upsets final judgments primarily under the third criteria, and explains:

> the Court has indicated that it would be reluctant to permit the legislature to interfere with a right which has been "adjudicated ... in final and unreviewable determination." However, it must be remembered that this is only one of many considerations in determining the constitutionality of retroactive legislation, and in any given case, the Court may deem the interests in the retroactive application of the statute to a right which has been reduced to judgment prior to its enactment sufficient to outweigh the disadvantages of such application. Such a case was *Fleming v. Rhodes* ....

*Id.* at 718-19.

measure to spread the costs of the employees' disabilities."  96

S. Ct. at 2893.  Likewise, as we quote above, the *Donaldson* Court

carefully considered the effect of the retroactive limitations

statute on the broker before holding that Minnesota's legislature

worked no injustice.  65 S. Ct. at 1143.  And recently, the Court

upheld a statute that retroactively assessed a fee for use of the

Iran-United States Claims Tribunal against a due process

challenge by applying this standard: "the test of due process"

for "[t]he retroactive aspects of legislation" is met if "the

retroactive application of the legislation is itself justified by

a rational legislative purpose."  *United States v. Sperry Corp.*,

110 S. Ct. 387, 396 (1989) (quoting *Pension Benefit Guar. Corp.*

*v. R.A. Gray & Co.*, 104 S. Ct. 2709, 2718 (1984)).

   *Donaldson* frees us from speculating as to the bounds of due-

process rationality when a legislature promulgates retroactive

laws.  Like the statute at issue in *Donaldson*, § 27A(b) restores

a remedy that PMLI and Simmons lost through lapse of time.  Like

the fraud-based cause of action at issue in *Donaldson*, the

Defendants' conduct would not have been different if they would

have foreseen § 27A(b).  Like the effect of the retroactive

legislation at issue in *Donaldson*, § 27A(b) subjects the

Defendants to a lawsuit.

   As a matter of practical effect on the parties, § 27A(b)

differs from the *Donaldson* legislation in one important respect.

The *Donaldson* Court characterized the broker's expectation that

the limitation law would remain as it was when suit was filed as

27

a "legitimate hope[]," yet held this expectation insufficient to render Minnesota's retroactive limitations statute violative of due process. *Id.* Section 27A(b) represents Congress' complementary view that courts should honor the expectations of plaintiffs and defendants as they ascertained § 10(b) limitations law upon the filing of these suits before *Lampf*. Section 27A(b) fulfills the hopes that the *Donaldson* Court found legitimate, and is thus a stronger candidate for retroactivity than the statute upheld by the Court; strong enough, we hold, to upset the Defendants' final, nonappealable judgments.[14]

### b. The Right to a Statute of Repose

The Defendants argue that even if Congress can legitimately upset their judgments with § 27A(b), the statute still contravenes due process because it creates civil liability for past acts. Their argument rests on *William Danzer & Co. v. Gulf*

---

[14] By this statement, we recognize that § 27A(b) should survive any heightened scrutiny required for retroactive legislation that upsets a judgment. We do not imply that retroactive legislation necessarily receives heightened scrutiny if it upsets a final judgment. A judgment for money is a species of property right, and we see no reason why the Constitution accords any more protection to an individual's right to her money when this right is represented by a judgment than when this right is represented by a savings passbook. *See Tonya K. by Diane K. v. Board of Educ. of Chicago*, 847 F.2d 1243, 1247 (7th Cir. 1988) ("Once the court has fixed property rights by judgment, the legislature has no greater power over this form of property than over any other."). The Supreme Court, this court, and others have consistently permitted legislatures to retroactively affect individuals' rights to money by applying a rationality standard. *See Sperry*, 110 S. Ct. at 396-97; *Pension Benefit Guar. Corp.*, 104 S. Ct. at 2718; *Usery*, 96 S. Ct. at 2893; *Wright v. Union Central Life Ins. Co.*, 58 S. Ct. 1025, 1031-34 (1938); *Hoffman v. City of Warwick*, 909 F.2d 608, 618-19 (1st Cir. 1990); *Fust v. Arnar-Stone Lab., Inc.*, 736 F.2d 1098, 1100 (5th Cir. 1984); *DiPippa v. United States*, 687 F.2d 14, 19 (3d Cir. 1982).

*& S.I.R. R.*, 45 S. Ct. 612 (1925), where the Court distinguishes between time-bar statutes that bar the *remedy* of suit in court, and those that extinguish the *liability* altogether. *Id.* at 613; *see also Donaldson*, 65 S. Ct. 1141 n.8 (distinguishing *Danzer* according to its remedy/liability dichotomy). If a time-bar statute extinguishes liability, the *Danzer* Court held that a legislature cannot constitutionally amend such a statute to revive liability once extinguished. 45 S. Ct. at 613. To do so would "retroactively ... create liability" and thus "deprive the defendant of its property without due process of law in contravention of the Fifth Amendment." *Id.*

The Defendants point to the *Lampf* Court's distinction between a one-year statute of limitation and a three-year statute of repose, and its holding that Congress effectively created this time-bar structure in 1934. *See* 111 S. Ct. at 2780. They observe that, like the statute at issue in *Danzer*, the three-year repose period recognized by the *Lampf* Court is an absolute bar not subject to equitable tolling. *Compare id.* at 2782 *with Danzer*, 45 S. Ct. at 613. From this, they reason that Congress in 1934 enacted an absolute three-year limit *on liability* for § 10(b) violations. Because § 27A(b) operates in these cases to lift this three-year outside limit, the Defendants argue that the statute "retroactively ... creates liability" in contravention of due process according to *Danzer*.

As a preliminary matter, we note that the *Usery* Court squarely held that Congress may retroactively create liability

for past acts, and thus compromises *Danzer's* holding that such legislation *per se* contravenes due process. *See Usery*, 96 S. Ct. at 2893 (legislation is not unlawful solely because "the effect of the legislation is to impose a new duty or liability based on past acts") (citations omitted). The Court has also questioned the continued validity of a dichotomy between remedy and right, at least where extinction of the remedy has the same effect as extinction of the right. *See Donaldson*, 65 S. Ct. at 1142; *see also Lynch*, 54 S. Ct. at 844. And the last time a party asked the Court to apply *Danzer*, the Court did not even make a determination as to whether the time-bar statute at issue affected remedy or liability. *International Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.*, 97 S. Ct. 441, 450-51 (1976).

But even if *Danzer* remains good law, it does not help the Defendants. *Danzer* and its progeny are inapposite to statutes that bar remedies, while leaving liability intact. We need look no further than *Lampf* to determine whether the three-year statute of repose asserted by the Defendants bars liability.

The *Lampf* Court strove for crystal clarity in stating its holding: "[T]he governing standard for an action under § 10(b) [is] the language of § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e)." 111 S. Ct. at 2782 n.9. Section 9(e), as passed by Congress in 1934, provides:

> No action shall be maintained to enforce any
> liability created under this section, unless
> brought within one year after the discovery

30

> of the facts constituting the violation and within three years after such violation.

This language unequivocally bars an action to enforce a liability, and says nothing about the continued existence of that liability. Nowhere does the *Lampf* Court even imply that the absolute three-year statute of repose extinguishes liability under § 10(b). We hold that it does not.

This holding conflicts with the Tenth Circuit's holding in *Anixter v. Home-Stake Production Co.*, 939 F.2d 1420, 1434 (10th Cir. 1991) that § 13 of the 1934 Act limits liability and not remedy. The *Lampf* Court relied upon § 13 to hold that § 9(e) governs § 10(b) limitations periods, yet mentioned nothing about limitation of liability. 111 S. Ct. 2780 & n.7. And like § 9(e), the language of § 13 unequivocally indicates a limitation of remedy, not of liability.[15] We disagree with the *Anixter* court's opposite conclusion.

The Defendants wrongly assume that a statute of repose must go to liability rather than remedy. *See City of El Paso v. Simmons*, 85 S. Ct. 577, 582 n.9 ("[T]he statute of repose challenged here is an alteration of remedy rather than obligation."). They are also mistaken that a time-bar statute

---

[15] Section 13 provides:

> In no event shall any such action be brought to enforce a liability created under § 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under § 77*l*(2) of this title more than three years after the sale.

15 U.S.C. § 77m.

limits liability merely because a legislature structures it as an absolute bar that is not subject to equitable tolling. In *Short v. Belleville Shoe Manufacturing Co.*, 908 F.2d 1385 (7th Cir. 1990), the court discussed § 13 as follows:

> Courts say that equitable tolling does not apply under § 13, but this is not strictly accurate. It is better to say that equitable tolling and related doctrines do not extend the period of limitations by more than the two-year grace period § 13 allows. Congress did not obliterate these valuable doctrines so much as it set bounds on the length of delay.

*Id.* at 1391 (citations omitted). Rather than assess whether a statute is characterized as one of repose or limitation, or whether it is subject to equitable tolling, the relevant inquiry under *Danzer* is whether the legislature intended liability or remedy to be extinguished by a time bar. *Donaldson*, 65 S. Ct. 1141 n.8. The primary evidence of this intent is, of course, the language of the statute.[16] In this case, we understand Congress to have decided in § 9(e) that the three-year time bar goes to remedy only.

Accordingly, the Defendants have failed to establish that § 27A(b) unconstitutionally deprives them of any right.

*2. Judicial Authority*

The Defendants next invite us to strike § 27A(b) as an affront to our Article III authority even if it does not

---

[16] The Ninth Circuit has distinguished *Danzer* by applying a presumption that time bar statutes "go to matters of remedy only." *Starks v. S.E. Rykoff & Co.*, 673 F.2d 1106, 1109 (9th Cir. 1982).

contravene their constitutional rights.  Other courts have considered some of the exact arguments made by the Defendants, and we draw on their wisdom before reaching the Defendants' novel contentions.

### a. *Beam* and *Klein*

The Defendants present the same *Beam* argument that the district court describes in *Simmons*, 786 F. Supp. at 592-94, and the Ninth Circuit describes in *Gray*, 989 F.2d at 1571-72.  We adopt the Ninth Circuit's analysis rejecting this argument insofar as it explains why any constitutional rule articulated in *Beam* does not limit Congress' powers under Article I.  *Id.* at 1572; *accord Cooke*, 1993 WL 248257 at *8; *Berning*, 990 F.2d at 277-78.  The Defendants also argue that § 27A(b) affects the outcome of cases without changing the law in violation of the rule announced in *United States v. Klein*, 80 U.S. 128 (1871).  We adopt the analysis of the Eleventh Circuit in *Scientific-Atlanta*, 971 F.2d at 1572, which explains that § 27A respects *Klein* by changing the law.  *Accord Cooke*, 1993 WL 248257 at *8; *Berning*, 990 F.2d at 278-79; *Gray*, 989 F.2d at 1568-70; *Anixter*, 977 F.2d at 1544-46.

### b. Pure Retroactivity

The Defendants also contend that Article I does not confer authority upon Congress to enact purely retroactive legislation. We view such a blanket prohibition as tantamount to a civil Ex Post Facto Clause, something that the Court has explicitly refused to recognize.  *See Galvan v. Press*, 74 S. Ct. 737, 743

33

n.4 ("The Court ... has undeviatingly enforced the ... position, first expressed in *Calder v. Bull*," that "the *ex post facto* Clause applies only to prosecution for crime....  It would be an unjustifiable reversal to overturn a view of the Constitution so deeply rooted and so consistently adhered to.") (citation omitted); *cf. Cummings v. Bostwick*, 481 F. Supp. 1251, 1254 & n.6 (D. N.H. 1980) (the constitutions of Colorado, Georgia, Idaho, Missouri, New Hampshire, Ohio, Tennessee and Texas explicitly prohibit all retroactive legislation).

To the contrary, the Court has held that a statute is not unconstitutional merely for its retroactivity.  *See Usery*, 96 S. Ct. at 2893; *see also Scientific-Atlanta*, 971 F.2d at 1573 (rejecting argument that § 27A transgresses separation of powers doctrine because it is purely retroactive).  The Defendants do not adequately distinguish *Usery* by explaining that the statute at issue in that case had some prospective effect.  The *Usery* Court nowhere predicates its blessing of retroactive legislation on an associated prospective component.  Indeed, the Court has before upheld purely retroactive legislation against a separation-of-powers challenge.  *See United States v. Sioux Nation of Indians*, 100 S. Ct. 2716, 2745 (1980).  The Constitution imposes no bar on purely retroactive legislation *per se*.

### c. Final Judgments

Lastly, the Defendants assert that § 27A(b) unconstitutionally usurps judicial authority by upsetting final

judgments.[17]  They say that § 27A(b) places Congress in the position of a super-appellate court, exercising review authority over the Supreme Court and its decisions in *Lampf* and *Beam*.

To define the constitutional separation of legislative and judicial authority, the Court focuses upon "the practical effect that the congressional action will have on the constitutionally assigned role of the federal judiciary." *Commodity Futures Trading Comm'n v. Schor*, 106 S. Ct. 3245, 3257 (1986).  Under this standard, we find § 27A(b) harmless.

With § 27A(b), Congress did not overrule decisions of the Supreme Court.  As we have held through *Scientific-Atlanta*, Congress changed the law after final judgment in *Lampf* and *Beam*, giving plaintiffs a new right to assert in court through a reinstatement motion.  The Defendants understandably claim a violation of *their* constitutional rights by this action, but § 27A(b) takes no authority from the judiciary.  Most significantly, § 27A(b) leaves the final resolution of securities-fraud disputes to the courts )) we will decide, indeed are here deciding, which controversies will end in dismissal despite § 27A(b).  If we understood a statute's purpose to be the reversal of results in particular controversies between private individuals, we would strike the statute as violative of our authority to decide cases.  *See, e.g., United States v. O'Grady*, 89 U.S. 641, 648 (1875) (finding that the Treasury Secretary

---

[17] The Ninth Circuit pretermitted this question in *Gray*. *See* 989 F.2d at 1571.

invaded judicial authority by offsetting a court's judgment with claimed, but unlitigated tax liability). But § 27A(b) is innocent on this score.

By upsetting final judgments, § 27A(b) at most denies us some authority to say when a controversy is over. There is no constitutional impediment to this denial if we share authority with Congress to say when a controversy is done. In *Sioux Nation,* the Court held that the Constitution does not forbid Congress from mandating that a controversy continues when the Court says that it is done.

The Sioux Nation brought a Fifth Amendment takings claim against the United States because our government breached a treaty obligation to reserve the Black Hills of South Dakota to the Sioux. The United States Court of Claims dismissed the Sioux Nation's claim for interest on the value of the seized property as barred by res judicata. *United States v. Sioux Nation of Indians*, 518 F.2d 1298, 1306 (Ct. Cl. 1975). The Supreme Court denied certiorari. 96 S. Ct. 449 (1975). Three years later, Congress directed the Court of Claims to review the claim's merits without consideration of res judicata. *See* 25 U.S.C. § 70s(b); 100 S.Ct. at 2727. After the Court of Claims ruled in favor of the Sioux Nation, the government appealed, asserting that § 70s(b) violates the constitutional separation of legislative and judicial authority. The Court upheld § 70s(b), permitting Congress to say that a controversy continues after the Court has said that it does not. 100 S. Ct. at 2735-36; *see also*

36

*Tonya K.*, 847 F.2d at 1247 (citing *Sioux Nation* for the proposition that "Congress may invite a court to reconsider even when it may not dictate the outcome").

*Schooner Peggy* and its extensive progeny also represent compelling evidence that the Constitution permits Congress and the judiciary to share authority in deciding when a court is finished deciding a particular controversy between individuals. *See* 5 U.S. (1 Cranch) at 110. With the exception of *McCullough*,[18] the Court has repeatedly observed Chief Justice Marshall's admonition that appellate courts must decide cases according to the law that exists when they decide, not the law that existed when the lower court rendered its decision.

In an extreme and stringent application of this rule, the Court rendered *149 Madison Avenue Corp. v. Asselta*, 67 S. Ct. 1726, *modifying*, 67 S. Ct. 1178 (1947). The *149 Madison Avenue* Court had affirmed a judgment for overtime pay due plaintiffs. 67 S. Ct. at 1184. But before the time for rehearing had run, Congress retroactively created a defense for the defendants, who asked the Court to reconsider its affirmance in light of the change in law. The Court changed its judgment from an affirmance to a remand so that the district court could consider the case in light of the new law. 67 S. Ct. at 1726. The district court eventually entered judgment for the defendants. *Asselta v. 149 Madison Ave. Corp.*, 90 F. Supp. 442 (S.D.N.Y. 1950).

_____

[18] *See* note 12, *supra*.

Of course, the rule announced in *Schooner Peggy* does not depend on whether the intervening law helps a particular party. Courts must apply the new law regardless of whether it ends a case that the court otherwise would have remanded for further proceedings.  Thus, we interpret *Schooner Peggy* to support the constitutional proposition that Congress and the judiciary share authority to decide when the judiciary's word on a controversy is its last.

The Defendants have articulated no constitutional reason why these controversies should not continue.

### III. CONCLUSION

We REVERSE the orders of the district courts and reinstate the cases.  We REMAND for further proceedings consistent with this opinion.